**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

United States of America

    v.                            Criminal No. 15-cr-192-01-JL
                                             Opinion No. 2016 DNH 152P
Steven Petrillo

## ORDER

Before the court are the parties' respective motions _in limine_ seeking to exclude certain evidentiary items and areas of inquiry from the upcoming trial in the above-captioned criminal case.[1]  Defendant Steven Petrillo, a former pharmacist employed by the Veterans Administration, stands charged with making a false statement to a department of the United States in violation of 18 U.S.C. § 1001.

The criminally actionable false statement alleged in the indictment involved the defendant's application for employment as a pharmacist with the Veterans Administration, a department of the United States government.  Specifically, the defendant wrote the answer "no" to questions on a printed employment application form inquiring whether he had been "discharged from any position for any reason" in the previous five years, despite allegedly having been fired by both Walmart and Lawrence (MA)

---

[1] The court preliminarily addressed these motions at the final pretrial conference held on April 22, 2016.  This order memorializes those rulings and their rationale.

General Hospital.  The defendant was eventually hired, employed, and then terminated by the VA Hospital in Manchester, New Hampshire.

**Defendant's motion in limine**

Petrillo has moved to exclude any information regarding the circumstances giving rise to the Walmart and Lawrence General Hospital employment terminations, other than that the firings occurred.  He also seeks to exclude any evidence of his alleged improper conduct occurring <u>after</u> the false statements alleged in the indictment, during his subsequent employment at the VA Hospital.

What this amounts to is a request to exclude documents generated upon his employment discharges--so-called "exit documents"--by Walmart (indicating "Involuntary Termination (Mandatory, No Rehire)" and "Gross Misconduct Integrity Issue (Theft, Violent Act, Dishonesty, Misappropriation of Company Assets")), and by Lawrence General Hospital (indicating "baseline competency deficiencies despite enhanced training and extended probation period").

The defendant, who disputes that he was terminated from those prior positions for the reasons indicated on those "exit documents," seeks to exclude those documents, and any reference

2

to the reasons for his prior firings.  He argues that the documents are (1) not relevant, (2) too speculative to be admissible, (3) amount to "uncharged allegations" deemed inadmissible under Federal Rule of Evidence 404(b).  He adds that even if the exit documents are admissible as generally relevant under Rule 401 and 402, or specially relevant under Rule 404, they are nonetheless impermissibly prejudicial, misleading and time-wasting under Rule 403, and thus inadmissible.  See Fed. R. Evid. 403.

The court views the evidence as relevant to a number of issues, but ultimately finds it unduly prejudicial and thus subject to exclusion, or at least redaction from the exit documents generated by Walmart and Lawrence General Hospital. The documents contain evidence (presumably corroborative of, or corroborated by, witness testimony) that the defendant was fired from two prior positions, and the reasons he was fired.  While only the occurrence of the previous terminations (and not their precipitating reasons) goes to prove the falsehood of the "no" answers on the VA Hospital employment application, see 18 U.S.C. § 1001, the prosecution's burden of proof also includes the materiality of the "no" answers denying prior job firings.  See id.; see also United States v. Sebaggala, 256 F.3d 59, 65 (1st Cir. 2001).  Since the reasons for a job applicant's prior

3

terminations would presumably be of interest to a prospective employer, likely triggering further inquiry and investigation, evidence of misconduct and incompetence could be relevant as to the materiality of the "no" answers.

Second, § 1001 also requires proof that the defendant made his false statement "knowingly and willfully." 18 U.S.C. § 1001(a). The exhibits in question are purported to be records of meetings at which the defendant was present, and in which he participated, and are purported to have been reviewed by the defendant, making the defendant's knowledge of the falsehood of his "no" answer more likely than it would be without the evidence, and thus relevant and admissible. Fed. R. Evid. 401, 402. See also 404(b) (knowledge).

Third, while the defendant's motive for making the false statements is not technically part of the prosecution's burden, it is certainly admissible in most circumstances. See, e.g., United States v. Reveron Martinez, 836 F.2d 684, 689-90 (1st Cir. 1988) (evidence sufficient to support conviction for knowingly made false statement where, "taking into account the totality of the evidence, direct and circumstantial, and giving due weight to the indirect evidence anent appellant's motive to falsify, the proof was adequate to underbrace a guilty verdict"). And Rule 404(b) provides prior uncharged misconduct

4

is relevant to prove motive.  See Fed. R. Evid. 404(b)

("[Evidence of a crime, wrong, or other act] may be admissible

for another purpose, such as proving motive . . . ."); United

States v. Mensah, 737 F.3d 789, 812 (1st Cir. 2013) ("Federal

Rule of Evidence 404(b) generally bars the use of evidence of

other crimes or acts to prove 'a mere propensity to behave in a

certain way,' but permits such evidence where it has 'special

relevance,' i.e., if it tends to prove such material facts as

knowledge, motive or intent.")  While the parties dispute the

reasons for the defendant's firings from Walmart and Lawrence

General, they both acknowledge the existence of evidence that

one or both of the prior firings involved diversion by the

defendant of pharmaceutical drugs.  A desire to obtain a new

position at a VA Hospital that would enable further drug seeking

and drug diversion activity is potentially relevant to show the

motive to lie in order to increase the likelihood of obtaining

the position.  Or, to put it more plainly, a pharmaceutical drug

abuser or addict might have a motive to lie on an application

for a job that would provide access to pharmaceutical drugs.

Despite the various purposes for which the information on

the "exit forms" could be relevant, "the court may exclude

relevant evidence if its probative value is substantially

outweighed by a danger" that it may unfairly prejudice the

5

defendant, confuse issues before the jury or mislead the jury, among other things. Fed. R. Evid. 403; see also United States v. DeCicco, 370 F.3d 206, 211 (1st Cir. 2004) ("first, a court must determine whether the evidence in question has any special relevance exclusive of defendant's character or propensity; and second, notwithstanding its special relevance, whether the evidence meets the standard set forth in Fed. R. Evid. 403."). United States v. Smith, 292 F.3d 90, 99 (1st Cir. 2002) ("We usually defer to the district court's balancing under Rule 403 of probative value against unfair prejudice."). Here, the risk of unfair prejudice and confusion of these issues outweighs the probative value provided by the evidence as to knowledge, of materiality (probative, but fairly week) and motive (also probative, but somewhat attenuated).

Although the parties dispute this point, the defendant's prior terminations may have been at least partially caused by his alleged drug seeking and drug diverting activity, and he was also suspected of such misconduct during his eventual V.A. Hospital employment, the application process for which was the backdrop for the charged false statement in violation of § 1001. The potential for juror confusion between the alleged drug-related occupational misconduct occurring prior to, and then

6

subsequent to,[2] his alleged false statements requires little
explanation.  And the prejudice resulting from introduction of
this alleged misconduct would likely be substantial, given that
occupational drug misconduct by a pharmacist is not only
professionally inappropriate, but also criminal and potentially
dangerous to public safety.  The potential for the jury to
unduly focus to the defendant's detriment on the purported
reasons for his prior firings, as opposed to the elements of the
offense charged, creates a prejudice that substantially
outweighs the probative value of the evidence to show
materiality and motive.

Excluding the evidence of the purported reasons for the
prior terminations, however, does not necessarily require the
outright exclusion of the "exit documents" altogether.
Appropriate redactions of the offending notations on the
documents, accompanied if necessary by an appropriate limiting
instruction, see Fed. R. Evid. 105, would render the exit
documents admissible to prove the fact of the prior
terminations--in other words, simply that the terminations took
place--as well as the defendant's knowledge thereof, both of
which are part of the prosecution's burden in this case, see 18

---

[2] And as noted infra, the post-hiring alleged drug misconduct at
the V.A. Hospital may not even be introduced at trial.

7

U.S.C. § 1001, while eliminating any potentially undue prejudice or confusion.

The defendant also seeks to exclude uncharged misconduct occurring after the alleged false statements and during the defendant's V.A. Hospital employment, most notably the defendant's alleged (and apparently unproven) drug diverting activities.  The United States Attorney has affirmatively stated that the prosecution will not seek to introduce such evidence. United States' Objection, (doc. no. 25, p. 4).

**Prosecution's motion in limine**

The prosecution has also moved to exclude four exhibits proffered by the defendant:  typewritten letters from Equifax, Inc. (formerly TALX Corporation).  Equifax apparently provides outsourced employee information management services to employers.  The letters were sent by Equifax in response to the New Hampshire Department of Employment Security's request for information regarding the defendant's eligibility for unemployment benefits.  The defendant wants to introduce them because they each contain a statement to the effect that he "voluntarily quit [his position at Walmart] to relocate and leave the area."  The defendant issued a subpoena to the Equifax employee who authored the letters, intending for the author to

authenticate them (see Fed. R. Evid. 901) and to lay a
foundation for admission under the so-called "business records
exception" to the rule against hearsay, (see Fed. R. Evid 802;
Fed. R. Evid. 803(6)) ("Records of a Regularly Conducted
Activity").  The prosecution argues that the Equifax letters
cannot be admitted as Walmart "business records," under Rule
803(6), and that the Equifax employee cannot provide any
testimony that would establish them as such.

     Before addressing the merits of this argument, the court
notes that were it to permit the admission of the Equifax
letters, which purport to contain evidence regarding the reasons
the defendant's employment at Walmart ended ("voluntarily quit
to relocate and leave the area"), it would open the door to the
admission of the very Walmart "exit documents" the defendant
successfully argued to exclude.  See supra; see also United
States v. Tetioukhine, 725 F.3d 1, 9 (1st Cir. 2013) (describing
the opening-the-door doctrine).  The opening-the-door doctrine
permits the admission of otherwise inadmissible evidence when a
party presents contrary evidence which either misleads, or, in
fairness should be countered.  Id.  Here, the court has excluded
as unduly prejudicial documents created by Walmart stating that
the defendant had been fired for misconduct.  See supra; see
also Fortini v. Murphy, 257 F.3d 39, 46 (1st Cir. 2001) ("Even

highly relevant evidence can be excluded if it is unduly prejudicial.") Permitting the defendant to introduce documents suggesting that he had voluntarily resigned would create an impression that, both in fairness and in deference to the jury's ability to assess totality of available evidence, would militate in favor of admitting the usually excluded documents.

That observation aside, the Equifax letters are inadmissible as proffered by the defendant. In the letters, an Equifax employee made a statement--apparently offered for its truth by the defendant, see Fed. R. Evid. 802(c)(2)--about the circumstances of the defendant's termination of employment from Walmart. As the defendant has not suggested that the Equifax author has any personal knowledge of the matter or made any serious showing that Equifax has actual custody of Walmart's business records, the basis for that statement is inadmissible hearsay. See id.

Rule of Evidence 803(6) permits the admission of otherwise-hearsay-precluded "records of a regularly conducted activity." Commonly referred to as the "business records exception" to the rule against hearsay, the admission of such records requires a multi-part showing involving the timing of the record's creation, how it was "kept" or maintained, and whether making the record was the regular practice of the creating business,

organization, occupation or calling the question.  Fed. R. Evid. 803(6)(A)-(C).  The rule further requires that "all these conditions are shown by the testimony of the custodian or another qualified witness"[3] or by a rule-compliant certificate to the same affect.  Fed. R. Evid. 803(6)(D).

The Equifax letters describing the end of the defendant" Walmart employment do not appear to satisfy these requirements, see Fed. R. Evid. 803(6)(A)-(C), and their author, subpoenaed by the defendant, cannot possibly provide the foundation-laying or authenticating testimony required under Rule 803(6)(D).  Even if the Equifax-employed author could lay the three-part foundation required by Rule 803(6)(A)-(C) as to the Equifax letters as records of Equifax--itself a somewhat dubious proposition, judging by the format and content of the letters--he could not possibly do so as to the letters' statements regarding occurrences at Walmart.  This renders the statement that the defendant "quit [Walmart] to relocate and leave the area" as "hearsay within hearsay," see Fed. R. Evid. 805, and thus inadmissible unless that information itself is either nonhearsay under Rule 801 or qualifies as hearsay exception under Rule 803

---

[3] Presumably, a qualifying witness would have the requisite personal knowledge, see Fed. R. Evid. 602, and be in a position to authenticate the document, see Fed. R. Evid. 901, unless another witness would do so.

11

or Rule 804.  The Equifax letter author is not in a position to provide the required testimony under Rule 803(6)(A)-(C) and thus does not qualify under Rule 803(6)(D).  The defendant has not argued or proffered evidence to the contrary.

Instead, the defendant argues that Equifax "integrated" Walmart's records into its own, thus qualifying the Equifax letter's author to lay the necessary foundation under Rule 803(6).  The defendant relies on a number of cases where district courts permissibly admitted one company's records through a witness of a different company that had taken custody of the records.  See Defendant's Objection to Government's Motion in Limine, (doc. no. 37 ¶ 2) (citing Brawner v. Allstate Indemnity Co., 591 F.3d 984, 987 (8th Cir. 2010) and cases cited thereon).  As far as those cases go, however, they do not apply in this situation.  The defendant has not offered Walmart business records, "incorporated" into Equifax's records, or in Equifax's custody.[4]  He has offered Equifax records which themselves contain hearsay regarding goings-on at Walmart.  The Equifax letters are inadmissible.

---

[4] If there is any information regarding actual incorporation or custody, see Fed. R. Evid. 104, the defendant has not provided it.

**Conclusion**

For the reasons set forth above, the defendant's motion in limine[5] is granted in part, and the prosecution's motion in limine[6] is granted.

**SO ORDERED.**

_____
Joseph N. Laplante
United States District Judge

Dated:  August 23, 2016

cc:  Helen W. Fitzgibbon, AUSA
     Donald A. Kennedy, Esq.
     Patrick Joseph McDowell, Esq.

---

[5] Document no. 24.

[6] Document no. 31.

13